United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Nicholas Christopher Ferro, Petitioner, <br><br> v. <br><br> Mark S. Inch, Secretary, Florida Department of Corrections, Respondent. | ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 21-24097-Civ-Scola |

### Order Denying Habeas Petition

Before the Court is the Petitioner Nicholas Christopher Ferro's amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 8.) The Respondent filed a response arguing why the Court should not grant the petition (ECF No. 13), and the Petitioner filed a reply brief in support of the petition (ECF No. 19). After careful consideration of the record, the briefing, and the relevant legal authorities, the Court **denies** the amended petition. (**ECF No. 8**.)

1. **Background and Procedural History**
   **A. Trial**

On November 30, 2009, Petitioner Nicholas Christopher Ferro was charged by information in state court with one count of second-degree murder and one count of resisting an officer without violence. (ECF No. 14-1 at 19.) Ferro was charged in connection with an altercation that took place in Key West on October 30–31, 2009. (*See id.*); (*see* ECF No. 15-18 at 9–28). Ferro was first tried in a jury trial in March 2012; however, a mistrial was declared once the jury reached a deadlock. (ECF No. 15-1 at 10, 12.) Ferro was retried in September 2013. (*See* ECF No. 15-2.)

The defense's primary trial theory was that Ferro stabbed the victim in self-defense. To establish self-defense, Ferro testified at trial. He testified that, on the night of October 30, 2009, he and some friends travelled to Key West to attend "Fantasy Fest." (ECF No. 15-18 at 9.) Ferro testified that later that night, he saw a group of people attacking his friend, Jorge Averoff. (*Id.* at 18.) Ferro entered the fray to help his friend, and during this fracas, Ferro testified that he was hit on the back of the head, causing him to fall to his knees. (*Id.* at 19, 22–23.) Ferro testified that, once on the ground, he took out a pocketknife and "stuck it in front" in self-defense. (*Id.* at 26–27.) The victim was

stabbed in the abdomen and later died at a hospital. (ECF No. 15-11 at 39–40, 67.)

Among other things, the parties disputed the location and angle of the stab wound. The State argued, relying on the testimony of Dr. Rhoda Smith and Dr. Emma Lew, that the evidence established that the location and angle of the wound was inconsistent with Ferro stabbing upwards from his knees while the victim bent over Ferro. (ECF No. 15-19 at 38.) The State further argued, pointing to the testimony of Dr. Lew (who did not testify in the first trial), that if the victim had been bent over Ferro at the time of the stabbing, as the defense argued, the victim's omentum and intestines would have been damaged. (*Id.* at 39.)

The defense's medical expert, Dr. Ronald Wright, testified that the stab wound was consistent with self-defense. (ECF No. 15-4 at 30); (ECF No. 15-15 at 34.) Dr. Wright initially testified erroneously that the omentum had been damaged, although he later noted that the medical reports did not indicate such damage. (ECF No. 15-15 at 69–70, 72, 79.) Nonetheless, Dr. Wright testified that while he would have expected damage to the omentum, the omentum is mobile and the omentum may have moved and avoided damage from the knife. (*Id.* at 71, 74, 79, 112.) In all, Dr. Wright testified that the nature of the stab wound was consistent with a scenario where Ferro was kneeling and the victim was standing or bent over him. (*Id.* at 114.)

After the second trial, on February 7, 2014, Ferro was convicted of one count of second-degree murder and one count of resisting an officer without violence. (ECF No. 8 at 2.) Ferro was sentenced to 28 years in prison. (ECF No. 14-1 at 26.)

### B. Post-Conviction Proceedings

On February 14, 2014, Ferro filed a direct appeal, raising five claims. (ECF No. 14-1 at 31, 65–89.) The district court affirmed on October 14, 2015. *See Ferro v. State*, 206 So.3d 52 (Fla. 3d DCA 2015).

On November 4, 2016, Ferro filed a motion to vacate judgment of conviction and sentence, raising seven claims. (ECF No. 14-1 at 153–201.) The trial court held an evidentiary hearing on January 17–19, 2019, and denied the motion in a written order dated August 14, 2019. (ECF No. 14-2 at 2–19); (ECF No. 7-1 at 1262–1279.)

On September 11, 2019, Ferro filed a notice of appeal to the Third District Court of Appeal and raised only two claims on appeal: (1) "Defense counsel was ineffective because he failed to investigate and adequately understand the critical medical evidence in this case " and he "failed to obtain a credible expert"; and (2) "Defense counsel was likewise ineffective for failing to

object to the prosecutor's comments, which compared him to the devil and portrayed the Key West combatants as innocent fun-loving kids." (ECF No. 14-2 at 20, 87–89.) The state appellate court affirmed. *See Ferro v. State*, 322 So.3d 234 (Fla. 3d DCA 2021).

### C. August 14, 2019 Order

As discussed above, the Circuit Court of the Sixteenth Judicial Circuit issued an order denying Ferro's state court motion for post-conviction relief on August 14, 2019.[1] Relevant here, Ferro raised claims of ineffective assistance of counsel, arguing that his trial counsel failed to (1) "adequately investigate the State's forensic evidence and secure the assistance of a new forensic medical examiner expert witness at the second trial" and (2) "object to pervasive improper argument during closing argument." (ECF No. 7-1 at 1263, 1276.) The Court will summarize the state court's decision on these grounds.

#### *1. Failure to Investigate Forensic Evidence*

The state court held that trial counsel adequately investigated the medical forensic evidence and reasonably retained Dr. Wright at the retrial. First, the state court found that trial counsel's decision to retain Dr. Wright at the retrial was a reasonable "strategic decision" based on trial counsel's evaluation of Dr. Wright's performance in the first trial and Dr. Wright's qualifications. (*Id.* at 1265, 1270.) Therefore, the state court concluded that trial counsel's decision to retain Dr. Wright, rather than hire a new medical examiner expert, was not deficient under *Strickland*. (*Id.*)

Second, the state court found that trial counsel did not ignore the medical evidence or fail to investigate the forensic medical evidence in the case. (*Id.* at 1266.) While the state court noted that trial counsel "probably could have focused more on the medical aspect of this case," the court warned that habeas courts cannot review the trial with the benefit of hindsight. (*Id.*) Without such hindsight, the state court determined that trial counsel adequately prepared Dr. Wright, finding that trial counsel provided Dr. Wright with all of the medical evidence and that the two discussed the relevant medical evidence, including the location of the stab wound and its significance

---

[1] In applying § 2254(d), the Court will "look through" the Third District Court of Appeal's opinion and review the rationales provided in the Circuit Court of the Sixteenth Judicial Circuit's decision dated August 14, 2019. (ECF No. 7-1 at 1262–1279; *see Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018) (holding that where the last state court decision is "unexplained," federal habeas courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning").

once "facts surfaced that changed the location of the entry wound." (*Id.* at 1266–68.) The state court concluded that trial counsel had an adequate understanding of the medical evidence and that it was reasonable to rely on Dr. Wright's expertise, even if Dr. Wright's evaluations were "incomplete in the opinion of others." (*Id.* at 1271.)

The state court also held that trial counsel did not fail to meaningfully depose the State's medical witnesses. The state court held that trial counsel understood the discrepancies between the medical witnesses as to the location of the stab wound, discussed these discrepancies with Dr. Wright, and made a "strategic decision" not to question Dr. Smith about the location of the stab wound at her deposition. (*Id.* at 1268.)

In any event, the state court also held that there was no prejudice to Ferro under *Strickland*. The state court found that even if trial counsel retained a different medical expert to explain the location of the stab wound and lack of damage to the omentum, the jury still would have been left with competing experts on medical evidence that "cuts both ways." (*Id.* at 1272.) Moreover, the state court walked through the additional evidence that weighed against Ferro's claim of self-defense. The state court pointed to Ferro's trial testimony concerning his attempts to evade the police and deny culpability, the lack of evidence corroborating Ferro's theory that he was trying to protect his friend, and the testimony of several witnesses who were at the scene. (*Id.* at 1272–74.) In all, the state court concluded that "[f]or the jury to believe that [Ferro] acted in self-defense, the witness testimony, [Ferro's] testimony, and [Ferro's] credibility were paramount" and that "it was the testimonial evidence, and [Ferro's] lack of credibility, not the actions of trial counsel or the defense's medical expert, that led to the conviction in this case." (*Id.* at 1274.)

### *2. Failure to Object*

As to the second relevant claim of ineffective assistance of counsel, the state court held that trial counsel was not ineffective for failing to object to certain comments made in the prosecutor's closing argument. The state court held that to prevail on such a claim, the comments had to be objectionable, there must have been "no tactical reason for failing to object," and the comments must have been "so prejudicial that they deprived [Ferro] of a fair trial." (*Id.* at 1277.) The state court concluded that as the prosecutor's reference to the devil was "an isolated remark that was not [] made a theme or feature of the State's case," the comment was not so prejudicial that it deprived Ferro of a fair trial. (*Id.* at 1278.) Last, the state court held that trial counsel made a strategic decision not to object to the prosecutor's reference to the victim as part of a group of "fun-loving kids" without a history of violence. (*Id.*)

The state court held that the prosecutor's statement was a "reasonable inference[]" from the evidence presented, and therefore Ferro had not carried his burden to show that it was an objectionable statement. (*Id.*)

## 2. Legal Standard

Under 28 U.S.C. § 2254(d), a federal court may only grant habeas corpus from a state court judgment where the state court's decision on the merits was (1) "contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d).[2] In evaluating the reasonableness of the state court's decision, the state court must be "given the benefit of the doubt," applying a "highly deferential standard." *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *see also Harrington v. Richter*, 562 U.S. 86, 105 (2011). In addition, the state court is not required to support its reasoning with Supreme Court cases, "so long as neither the reasoning nor the result of [its] decision contradicts them." *See Early v. Packer*, 537 U.S. 3, 8 (2002).

When performing a review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.[3] *See* 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (explaining that a federal court can disagree with a state court's factual finding only if "the factual premise was incorrect by clear and convincing evidence").

Here, Ferro brings two claims of ineffective assistance of counsel. Courts evaluate ineffective assistance of counsel claims with a two-prong test. *See Strickland v. Washington*, 466 U.S. 668 (1986). First, the petitioner must show that counsel's performance was deficient, meaning that counsel's representation "fell below an objective standard of reasonableness." *See id.* at 687–88. To prove deficient performance, the petitioner must show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *See id.* at 687. Second, the petitioner must show that counsel's deficient performance prejudiced the

---

[2] Moreover, a petitioner may only bring a claim under § 2254 if the applicant has "exhausted the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(1). The State agrees that Ferro has exhausted the claims that he brings to federal court. (ECF No. 13 at 35, 40–41.)

[3] Section 2254(e)(2) "prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). The Petitioner does not argue that any of the grounds permitting an evidentiary hearing in § 2254(e)(2) are met; therefore, the Court denies an evidentiary hearing.

defense. *See id.* at 691. Petitioners must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694. The two-prong test places a burden on the petitioner to show that his counsel's errors were "so serious as to deprive the defendant of a fair trial." *See id.* at 687.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. U.S.*, 218 F.3d 1305, 1313 (11th Cir. 2000)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction," and "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *See Strickland*, 466 U.S. at 687. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances," the challenged action "might be considered sound trial strategy." *See id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if a decision seems unwise in retrospect, it will only be held to have been ineffective assistance if it was "so patently unreasonable that no competent attorney would have chosen it." *Dingle v. Sec'y for Dep't of Corrs.*, 480 F.3d 1092, 1099 (11th Cir. 2007).

### 3. Analysis

Ferro filed his petition for writ of habeas corpus under 28 U.S.C. § 2254 in this Court on November 19, 2021. (ECF No. 1.) On December 28, 2021, Ferro filed an amended petition. (ECF No. 8.) Ferro raises in this Court two claims that he raised in state court, arguing that his trial defense counsel was ineffective for (1) "failing to adequately investigate the State's forensic evidence and for failing to secure the assistance of a new medical expert for the retrial" and (2) "failing to object to the prosecutor's improper argument." (ECF No. 8 at 28, 45.) The State contends that the petition is untimely and that, even if the petition is considered timely, neither ground provides relief. The Court will address each argument in turn.

### A. Statute of Limitations

A state prisoner must file a federal habeas corpus petition within one year of, relevant here,[4] "the date on which the judgment became final by the

---

[4] Ferro does not contend that any of the other grounds of § 2244(d)(1) apply here.

conclusion of direct review or the expiration of the time for seeking such review." *See Jimenez v. Quarterman*, 555 U.S. 113, 114 (2009) (discussing 28 U.S.C. § 2244(d)(1)(A)). Time during which "a properly filed application for State post-conviction or other collateral review . . . is pending" does not count towards the one-year limitations period. *See* 28 U.S.C. 2244(d)(2).

The parties here dispute when the judgment at issue became final by virtue of the "expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A). In other words, the parties dispute (and, as to the statute of limitations, only dispute[5]) from what date the one-year limitations period begins. The State argues that the clock started running on January 12, 2016, which is ninety days after the denial of Ferro's direct appeal was affirmed on October 14, 2015. (ECF No. 13 at 31.) Ferro argues that the clock should have started on February 3, 2016, which is ninety days after the state court denied his motion for a written order, filed pursuant to Florida Rule of Appellate Procedure 9.330(a)(2)(D), on November 5, 2015. (ECF No. 19 at 7); (ECF No. 14-1 at 32.) Under the State's calculation, Ferro's petition is untimely. Unsurprisingly, under Ferro's calculation, the petition is timely.[6]

A conviction becomes final after the expiration of time to petition for certiorari following the entry of judgment on direct appeal. *See* 28 U.S.C. § 2244(d)(1)(A); *see also Jimenez*, 555 U.S. at 119–20 (holding that a petitioner's conviction became final once the "time for seeking certiorari review in this Court expired"). Petitioners have ninety days after the entry of judgment to petition the United States Supreme Court for a writ of certiorari. *See* Sup. Ct. R. 13.

Key here is determining when judgment was entered. To do so, courts look to state law. *See Chamblee v. Florida*, 905 F.3d 1192, 1196 (11th Cir. 2018) (holding that to "determine whether the [petitioner's] judgment was 'final'" under § 2244(d)(1)(A), courts "must look to the actions taken by the state court and the relevant state law") (citing *Jimenez*, 555 U.S. at 120). Under Florida law, an appellate order is "deemed rendered" only after "any timely and

---

[5] Both parties agree that the one-year limitations period was tolled from November 4, 2016, when Ferro filed a motion to vacate judgment of conviction and sentence (ECF No. 14-1 at 153–201), to August 23, 2021, when the mandate was issued denying the motion and affirming the conviction (ECF No. 14-2 at 43). *See Brown v. Sec'y for Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008) (noting that "a properly filed Rule 3.850 motion seeking to set aside a conviction would undoubtedly toll AEDPA's limitations period during its pendency"); 28 U.S.C. § 2244(d)(2).

[6] The Court notes that Ferro has not argued that any equitable tolling should apply. *See Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1157–58 (11th Cir. 2014) (holding that, in "rare and exceptional circumstances," equitable tolling may be available to render an untimely petition timely).

authorized motion under rule 9.330 or 9.331" is "withdrawn or resolved." *See* Fla. R. App. P. 9.020(i). Relevant here, a motion for a written opinion is a motion under Rule 9.330. *See* Fla. R. App. P. 9.330(a)(2)(D). Therefore, Ferro argues, under state law, Ferro's conviction was final—as measured by Florida Rule of Appellate Procedure 9.020(i)—only after resolution of his motion for a written opinion under Rule 9.330.

The State argues that a motion for a written opinion should not delay the finality of Ferro's conviction. The State only cites to one case, which held that a motion for written opinion under Florida law "does not toll the limitations period for filing a petition for certiorari review." *See Holybrice v. Sec'y, Dep't of Corrs.*, No. 8:18-cv-2374-T-17AEP, 2019 WL 11505330, at *3 (M.D. Fla. Feb. 28, 2019). The court in *Holybrice* reached that conclusion by relying on Supreme Court Rule 13, which, as explained above, gives parties ninety days from the "date of entry of the judgment or order sought to be reviewed" to seek certiorari review. *See id.* The court reasoned that as Rule 13 only contains one exception, which provides that the ninety-day clock runs after resolution of any petitions for rehearing, there can be no exception for other types of motions, such as a motion for a written opinion. *See id.*

But, as explained above, courts do not look to federal rules to determine when a state conviction is final; rather, courts must look to state law. *See Chamblee*, 905 F.3d at 1196. Therefore, here, the Court must look to Rule 9.020(i) to determine when a judgment in Florida is final for purposes of § 2244(d)(1)(A) and Supreme Court Rule 13. Applying Rule 9.020(i) in this case, judgment was entered on November 5, 2015, and AEDPA's one-year limitation period began to run on February 3, 2016, or ninety days after the entry of judgment. Using February 3, 2016, as the relevant date, and excluding any periods where the one-year limitations period was tolled,[7] the Court holds that Ferro's petition is timely.

### B. Ground One

First, the Court turns to Ferro's argument that his trial counsel was ineffective for "failing to adequately investigate the State's forensic evidence and for failing to secure the assistance of a new medical expert for the retrial." (ECF No. 8 at 28.) In particular, Ferro argues that his trial counsel failed to adequately understand both the science and importance of the medical forensic evidence at issue—the location of the stab wound and the organs damaged in the stabbing—and failed to ensure that the defense's medical expert, Dr.

---

[7] As noted above, the parties agree on the relevant tolling periods. The parties only disagree on when the conviction was final.

Ronald Wright, was prepared. Moreover, Ferro argues that counsel was ineffective for failing to retain a new medical expert in the retrial.

Ferro's petition draws heavily on the connection between Ferro's self-defense theory and the medical forensic evidence. Ferro's trial theory was that he had been knocked down to his knees just before he stabbed the victim—who was standing over Ferro—in self-defense. (ECF No. 15-4 at 31.) At trial, the State countered that Ferro approached the victim and that the stabbing was not in self-defense. (*See* ECF No. 15-19 at 40.) To prove their respective theories, the parties disputed the location and angle of the stabbing, as well as the organs damaged. (*See* ECF No. 15-4 at 23–24.)

At the retrial, the State bolstered its case by introducing a new medical expert, Dr. Emma Lew, and designating Dr. Rhoda Smith as an expert witness. (ECF No. 8 at 9.) Ferro argues that at the retrial, his trial counsel did not adequately adjust his trial strategy. (*Id.*) Rather, Ferro argues that his trial counsel did not review photographic evidence concerning the location of the wound and did not prepare Dr. Wright regarding the lack of damage to the omentum. Moreover, Ferro argues that trial counsel erred in failing to present the "flexion theory" to explain the lack of damage to the omentum.[8]

The Court finds that this claim fails, as the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law and it was not based on an unreasonable determination of the facts.

### 1. *Deficient*

Starting with the first prong of the *Strickland* inquiry, the Court finds that the state court reasonably determined that Ferro's trial counsel was not constitutionally deficient. Trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Daniel v. Comm'r, Ala. Dept' of Corrs.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 691). However, "strategic choices made [by trial counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690–91). Moreover, decisions regarding "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a

---

[8] At the state court evidentiary hearing, Dr. John Marraccini testified regarding the "flexion theory." (ECF No. 7-1 at 858.) Flexion refers to the bending of the waist, which Dr. Marraccini testified would cause the omentum to shift, thereby potentially explaining why the omentum was not damaged here and making Ferro's account of the stabbing more probable. (*Id.* at 858–64.)

strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995)); *see also Chaney v. Sec'y, Fla. Dep't of Corrs.*, 447 F. App'x 68, 70 (11th Cir. 2011) ("Ineffective assistance claims based on 'complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because all allegations of what a witness would have testified are largely speculative.'") (quoting *Buckelew v. U.S.*, 575 F.2d 515, 521 (5th Cir. 1978)).

Ferro's challenges to his trial counsel's performance largely center around his trial strategy—namely, his trial counsel's failure "to adequately re-investigate the State's forensic evidence" and his failure "to secure a new medical examiner expert witness for the retrial." (ECF No. 8 at 29.) In particular, the crux of Ferro's argument is that his trial counsel was deficient for failing "to present the Flexion theory to the jury to explain why the omentum was not damaged." (*Id.* at 30.)

As this argument boils down to trial counsel's strategy, the argument depends on whether trial counsel adequately investigated the case. *See Daniel*, 822 F.3d at 1262 (holding that trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). Ferro argues that his trial counsel failed to adequately investigate the case by:

- Failing to "previously review and understand" photographs of the stab wound and failing to prepare Dr. Wright (ECF No. 8 at 34–37);
- Failing to adequately depose the State's medical experts (*Id.* at 35);
- Failing to consult with, and hire, a different medical expert (*Id.* at 39, 43).

The Court finds that the state court reasonably concluded that Ferro's trial counsel adequately investigated the case prior to the retrial. First, Ferro argues that trial counsel "ignored or overlooked" the importance of one photograph, introduced in the retrial, that depicted the location of the stab wound and that trial counsel failed to adequately prepare Dr. Wright on the location and nature of the stab wound. (ECF No. 8 at 34); (ECF No. 7-1 at 497.) While attorneys may not overlook "readily available document[s] that would have opened doors to undiscovered mitigation evidence," attorneys are entitled to rely on the opinions of their experts, if it is reasonable to do so. *See Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1262–63 (11th Cir. 2011) (concluding that "we cannot conclude that [the petitioner's attorney] was deficient for trusting his own expert"); *Darling v. State*, 966 So.2d 366, 377 (Fla. 2007) (holding that counsel was not ineffective for relying on a qualified

expert's opinion, even if that opinion was "somehow incomplete or deficient in the opinion of others"). Here, as the state court held, trial counsel provided Dr. Wright with everything that he received from the State. (ECF No. 15-20 at 130–31.) After reviewing these materials and discussing the case with trial counsel, Dr. Wright came to a conclusion regarding the location of the stab wound, and the state court reasonably held that trial counsel had no reason to second-guess Dr. Wright's opinion. (*Id.* at 115.)

Additionally, trial counsel did not fail to adequately investigate the case through his depositions of the medical witnesses. While trial counsel re-deposed the medical witnesses before the retrial (*see id.* at 120), Ferro now attacks trial counsel for failing to ask certain questions about the stab wound and the omentum. (ECF No. 8 at 35.) However, lawyers are not constitutionally defective for failing to ask certain questions, let alone any questions, in depositions. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985). Moreover, claims of deficiency are even weaker when the petitioner cannot point to any "specific information" that would have been obtained in the deposition if the petitioner's favored line of questioning had been asked. *See id.* at 637. Here, Ferro argues that trial counsel's failure to ask witnesses about the omentum was deficient, but Ferro does not identify any information that could have been obtained if such questions were asked. Indeed, as the state court noted, at the retrial, Dr. Lew and Dr. Smith agreed with Dr. Wright that the omentum is mobile and that it could have moved, thus explaining the lack of damage. (ECF No. 15-21 at 79); (ECF No. 7-1 at 1269.) Absent any surprise at trial that should have alerted trial counsel to the need to ask about the omentum at the second depositions, the Court will not use hindsight to hold trial counsel to a level above that which is constitutionally required. Therefore, the Court holds that the state court reasonably applied federal law when it rejected Ferro's claim.

Last, Ferro argues that trial counsel failed to investigate the case by failing to consult with, and retain, a different medical expert. As noted above, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *See Conklin*, 366 F.3d at 1204. The state court reasonably concluded that Dr. Wright was a "well-qualified medical examiner" and that the decision to retain him was reasonable. (ECF No. 7-1 at 1270.) Moreover, trial counsel's failure to consult another expert before the retrial was not unreasonable, as he already had retained an expert (Dr. Wright) who he believed performed well and presented favorably to the jury in the first trial. (ECF No. 15-20 at 119.) While Ferro may now point to another expert that trial counsel could have consulted and who could have explained, in a different manner, the lack of damage to the

victim's omentum, the Court will not hold trial counsel's decision unreasonable with the benefit of hindsight. *See Strickland*, 466 U.S. at 689 (holding that courts must "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time").

For the reasons set out above, the Court finds that the state court's conclusion that Ferro's trial counsel conducted an adequate investigation into the case was not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts. The Court declines to second-guess trial counsel's strategic decisions, such as whether to call another expert witness or whether to ask certain questions in depositions. And the Court holds that trial counsel reasonably relied on Dr. Wright's medical opinions, including those opinions relating to the location of the wound and the organs damaged. For these reasons, the Court denies the petition.

### *2. Prejudice*

Turning to the second prong of the *Strickland* test, even if trial counsel's performance was deficient, the Court finds that the state court's decision that any deficiency was not prejudicial was not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts. As described above, the prejudice prong requires that petitioners show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

As the state court held, this case at trial did not rest on medical forensic evidence alone. Rather, "[f]or the jury to believe that [Ferro] acted in self-defense, the witness testimony, [Ferro's] testimony, and [Ferro's] credibility were paramount." (ECF No. 7-1 at 1274.) And the state court reasonably held that Ferro was not credible, given his testimony concerning his initial efforts to evade the police and obfuscate his involvement in the stabbing—testimony that was inconsistent with a claim of self-defense. (*Id.* at 1272.) The state court concluded that "it was the testimonial evidence, and [Ferro's] lack of credibility, not the actions of trial counsel or the defense's medical expert, that led to the conviction in this case." (ECF No. 7-1 at 1274.)

Even if trial counsel put forward expert testimony regarding the "flexion" theory to explain the lack of damage to the omentum, there is no indication that the result would have been different. Rather, Dr. Wright, Dr. Lew, and Dr. Smith all agreed at the retrial that the omentum is mobile. (ECF No. 15-21 at 79.) The "flexion theory" would have merely presented another theory to the jury regarding how the omentum may have avoided damage in the stabbing.

And, as the state court noted, Dr. Lew testified that even if presented with the flexion theory, she would not have changed her opinion that the angle and location of the stabbing were inconsistent with Ferro's claim of self-defense. (ECF No. 7-1 at 1272.)

At most, even if Ferro's trial counsel had presented a different expert witness who testified on the "flexion" theory, the jury still would have had to weigh such testimony against the testimony of Dr. Smith and Dr. Lew, and the jury would have had to evaluate the credibility of Ferro's testimony. For the reasons set out above, the Court finds that the state court's determination that there was no prejudice was not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts.

### C. Ground Two

Next, Ferro argues that his trial counsel was ineffective for "failing to object to the prosecutor's improper argument" during closing argument. (*See* ECF No. 8 at 45.) In particular, Ferro argues that trial counsel should have objected to two comments made by the State attorney in closing argument: (1) when the State prosecutor "compared Ferro to the devil," and (2) when the prosecutor referred to the victim as part of a group of "fun loving kids" who had no criminal history. (*Id.* at 47.)

"Ineffective assistance of counsel may be established where a defense counsel fails to object to the prosecutor's 'very serious instances of prosecutorial misconduct.'" *Fugate v. Head*, 261 F.3d 1206, 1223 (11th Cir. 2001) (quoting *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996)). Such misconduct arises when a prosecutor's objectionable remarks at closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974); *see also Sneed v. Fla. Dep't of Corrs.*, 496 F. App'x 20, 28 (11th Cir. 2012) (citing *Donnelly*, 416 U.S. at 642–45). Moreover, the petitioner must show that "there is a reasonabl[e] probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *See Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1987).

The Court holds that the state court's rejection of this claim was not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts. First, Ferro complains that the prosecutor compared him to the devil in closing argument when the prosecutor referenced the movie *The Usual Suspects*. (ECF No. 8 at 46.) The prosecutor stated, "Every great story has a speckle of truth, a little bit of reality that gives it that edge to make it believable. Or as Kevin Spacey said in the Usual Suspects, the greatest trick the devil ever played was convincing the world he

didn't exist." (ECF No. 7-3 at 4334.) The state court held that this comment did not infect the trial and deprive Ferro of his due process rights as the comment was an "isolated remark that was not [] made a theme or feature of the State's case." (ECF No. 7-1 at 1278); *see also Crimi v. U.S.*, No. 6:07-cv-1858-Orl-31GJK, 2008 WL 2949518, at *4 (M.D. Fla. July 28, 2008) (holding that courts "commonly reject" ineffective assistance of counsel claims based on a failure to object to a statement comparing a criminal defendant to the devil) (collecting cases). The Court holds that this comment did not deprive Ferro of a fair trial and that the state court's determination was not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts.

Second, Ferro complains that the prosecutor unlawfully referred to the victim as part of a group of "fun-loving kids" without a history of violence. (ECF No. 8 at 47.) The state court held that Ferro failed to carry his burden to show that this was an objectionable statement, as the statement was a "reasonable inference" from the evidence presented. (ECF No. 7-1 at 1278.) At closing, prosecutors may "argue both facts in evidence and reasonable inferences from those facts." *See U.S. v. Gonzalez*, 834 F.3d 1206, 1226 (11th Cir. 2016). The Court holds that the state court's determination that Ferro failed to show that this statement was objectionable was not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts.

### 4. Conclusion

For the reasons explained above, the Court **denies** Ferro's petition (**ECF No. 8**), and the Court holds that the state court's adjudication of Ferro's claims was not contrary to, or an unreasonable application of, federal law, nor was the state court's adjudication based on an unreasonable determination of the facts. The Court declines to issue a certificate of appealability.[9] The Clerk is directed to **close** the case. Any pending motions are denied as moot.

**Done and ordered** at Miami, Florida on May 5, 2022.

_____
Robert N. Scola, Jr.
United States District Judge

---

[9] A certificate of appealability may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). For the reasons explained above, the Court finds that Ferro did not make such a showing.